IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sandra M. Pompili, | : | Case No. 1:10-CV-1460 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). Pending are the parties' Briefs on the Merits (Docket Nos. 18 & 25). For the reasons that follow, the Commissioner's decision is reversed and the case is remanded pursuant to sentence four of 42 U. S. C. § 405(g).

### I. PROCEDURAL BACKGROUND.

On February 2, 2002, Plaintiff filed an application for DIB alleging that she became unable to work on October 29, 2001, because of her disabling condition (Tr. 743). On February 15, 2002, the state agency determined she was disabled as of October 29, 2001, based on meeting the listing for hematological disorders at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 7.11 (Tr. 19, 743). Following a Continuing Disability Review (CDR) by the agency, Plaintiff was notified that her health had improved and her other conditions were not of the severity that would prevent

her from working effective July 2004 (Tr. 700-702; 729-730).

On August 22, 2004, Plaintiff requested reconsideration of the cessation of disability (Tr. 691). On April 20, 2005, Plaintiff attended a disability hearing before Ernesta Moody, a hearing officer (Tr. 363-373). The request for consideration was denied on July 29, 2005 (Tr. 350-351). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). On February 5, 2008, Administrative Law Judge (ALJ) Robert M. Senander held a hearing at which Plaintiff appeared, waived her right to have representation and chose to proceed with the hearing (Tr. 745, 747-751). On June 17, 2008, the ALJ issued an unfavorable decision (Tr. 14-22). On April 26, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Tr. 2-4). Plaintiff filed a timely complaint in this Court seeking judicial review (Docket No. 1).

## II. FACTUAL BACKGROUND

At the time of the hearing, Plaintiff was 36 years of age, 5'2" tall and weighed approximately 119 pounds. A right-handed person, Plaintiff resided in a house with her minor daughter for whom she filed an application for child's insurance benefits on April 11, 2002 (Tr. 735-736). Plaintiff's divorce was pending. She drove but had difficulty seeing at night (Tr. 755-756).

A number of years after completing high school, Plaintiff updated her computer skills at the Townsend Learning Center, an educational and vocational rehabilitation facility and underwent vocational rehabilitation through the Bureau of Service for the Visually Impaired in 2006 (Tr. 755-756; www.townsendlearningcenter).

In 1999, Plaintiff worked as an escrow analyst at a bank. There she lifted only as much

as one ream of paper or less than ten pounds (Tr. 760). She subsequently worked at Walgreens as a Hallmark® card coordinator and cash register clerk. In the capacity of clerk, she operated the register and lifted up to ten pounds. These two jobs were from July 2000 to November 2001. Plaintiff worked at Walgreens a short time in 2003 as a cash register clerk (Tr. 757-759).

Plaintiff had chemotherapy and a bone marrow transplant on March 6, 2002, due to acute myelogenous leukemia (Tr. 760-761). She was in remission without evidence of recurrent disease since that time. However, she had bouts of chronic graft-versus-host skin disease (GVHD) (a complication that occurs after bone marrow transplant in which newly transplanted material attacks the transplant recipient's body) (Tr. 761-763; www.ncbi.nlm.nih.gov). In June 2002 she was hospitalized for rashes and open sores arising from the GVHD for which she was put on Prednisone. The side effects of this medication lasted for several months (Tr. 761-762). She and her physician were searching for triggers to the symptoms while adjusting the dosage of medication to find her baseline (Tr. 763, 769).

Plaintiff had vision acuity problems arising from the disease. Specifically, she formed cataracts and had chronic dry eye requiring daily usage of drops (Tr. 764). These problems evolved in to eye sensitivity and difficulty reading or using the computer (Tr. 765). She noticed this problem during vocational rehabilitation when she was unable to take the typing tests because her eyes would not focus (Tr. 766).

Plaintiff did not do laundry primarily because it was difficult for her to go up and down the stairs. She did make school lunches for her daughter. She did not vacuum. She could not work around people due to the immune suppressants she was taking. She would need to sit at any job most of the time. The Prednisone caused her hands to shake and to become inflamed several

times per month (Tr. 769-775).

### III. MEDICAL EVIDENCE.

Plaintiff was admitted to the Cleveland Clinic on October 30 and discharged on December 12, 2001. Diagnosed with acute myelogenous leukemia, Plaintiff underwent induction chemotherapy, a first line treatment for cancer in which high doses of chemotherapy are given (Tr. 669-679).

On October 31, 2001, Dr. Moulay Meziane discovered a 6 cm. mass in the posterior aspect of the left hilum extending to the region of the superior segment of the left lower lobe (Tr. 647). The unenhanced computed tomographic (CT) brain scan administered on November 3, 2001, showed normal attenuation and morphology (Tr. 643).

On November 6, 2001, Plaintiff underwent an ultrasound to ascertain the source of edema in the lower extremities. Generally, Plaintiff's veins were open and flowing without evidence of deep venous thrombosis (Tr. 642).

On November 7, 2001, cultures from twenty of Plaintiff's cells were analyzed for chromosome abnormalities. It was determined that all twenty cells comprised an abnormal clone characterized by having three copies (trisomy) of chromosome eight (Tr. 648).

On November 26, 2001, Plaintiff underwent several diagnostic tests including a renal biopsy and CT scans of the chest and abdomen.

On December 6, 2001, Plaintiff underwent a retroperitoneoscopic renal biopsy to assess whether there was malignant infiltration of the right kidney. The wedge taken from the lower pole of the right kidney showed no sign of malignancy (Tr. 680-682)**.**

On December 19, 2001, Plaintiff underwent a follow-up visit with the oncology unit at

the Cleveland Clinic for acute myeloid leukemia with a trisomy-8 abnormality. Dr. Ronald Sobecks, M. D., a hematologic oncologist, determined that after undergoing induction chemotherapy, Plaintiff was clinically stable and asymptomatic. She was in complete remission (Tr. 677-678). However, her kidneys were enlarged (Tr. 637).

On November 20, 2001, there was evidence from the CT scan of the chest that there was improvement in the focal mass. This connoted improvement of infection or neoplasia (Tr. 636).

The results from the echocardiogram administered on January 17, 2002 showed a normal left ventricle and right ventricle in both size and function, no valvular abnormalities and small pericardial effusion (Tr. 662).

Plaintiff was admitted to the hospital on January 17 and discharged on January 29, 2002. There she underwent a left thoracotomy and resection of the left hilar mass. A chest X-ray revealed a left lung collapse and hemoglobin build up in her blood. The results from the test measuring her breath were normal (Tr. 598, 650-654).

On February 26, 2002, Plaintiff was admitted to the Cleveland Clinic for induction chemotherapy. She was discharged on April 1, 2002 (Tr. 584-586).

On April 29, 2002, Dr. Sobecks noted that Plaintiff had been without evidence of residual/recurrent leukemia on her most recent bone marrow examination from April 22, 2002. He prescribed medication for nausea (Tr. 577).

On May 3, 2002, Plaintiff was diagnosed with a heart rate disorder (Tr. 573).

In June 2002, Plaintiff was hospitalized for two weeks to manage the GVHD in the gastrointestinal tract. Dr. Steven Anderson noted that Plaintiff was depressed; he referred her to the psychiatric department (Tr. 560).

5

On August 5, 2002, Dr. Sobecks noted that Plaintiff's mild erythema over the palms and soles of her feet was resolved to the extent that she required fewer analgesics (Tr. 523).  On August 19, 2002, Plaintiff was progressing so well that Dr. Sobecks reduced the dosage of Prednisone (Tr. 549).

Dr. Sobecks observed on January 6, 2003, that Plaintiff had been without evidence of recurrent leukemia for 305 days.  There was no evidence of GVHD either (Tr. 473).

Plaintiff was treated at Cleveland Clinic beginning on February 5, 2003 for GVHD. While there, Dr. Brian J. Bolwell, M. D., administered intravenous hydration in addition to drug therapy (Tr. 462-464).

On February 6, 2003, Dr. Steven S. Shay concluded that based on specimens submitted from the duodenum biopsy and stomach biopsy that Plaintiff had GVHD (Tr. 603).  In addition, Dr. Shay found evidence of mild acute gastritis and mild inflammation of the duodenum (Tr. 528).

On May 2, 2003, the chest examination revealed minimal cardiomegaly, no evidence of infiltrate or edema (Tr. 514).

Dr. Sobecks continued to "taper" Plaintiff's Prednisone as her difficulty swallowing had resolved on June 6, 2003 (Tr. 516).

Plaintiff underwent a series of psychotherapy sessions with a licensed social worker, Jane M. Dabney, at the Cleveland Clinic Foundation.  During all sessions, Plaintiff addressed personal stressors including her marital relationship and other family stressors.  At each session, Plaintiff reported compliance with her drug therapy and treatment (Tr. 432, 438, 440).

On October 10, 2003, Plaintiff underwent non-chemotherapy treatment over the course of three and one half hours.  She tolerated the procedure well.  Dr. Sobecks noted that Plaintiff's was

without evidence of recurrent GVHD (Tr. 425-428)

On January 23, 2004, Plaintiff underwent non-chemotherapy treatment over the course of three and one half hours. She tolerated the procedure well (Tr. 414-416).

Dr. Careen Lowder, M. D., opined that Plaintiff's ocular pathology responsible for her impaired vision was attributed to Plaintiff's inflammation and possible steroid administration (Tr. 383-385).

On July 17, 2004, Dr. Louis Barnes, M. D., conducted a case analysis and opined that there had been medical improvement. A non severe rating was appropriate (Tr. 381).

In September 2004, Plaintiff reported that she had been prescribed a lubricant for chronic dry eyes. Apparently her prior ulcerations had resolved. Dr. Sobecks increased the dosage of Prednisone to address patches of red skin in her armpits, medial thighs and over her feet (Tr. 387).

Results from an echocardiogram administered on June 19, 2006, showed a normal sinus rhythm. Plaintiff was diagnosed with benign hypertension which was stabilized on medication (Tr. 267, 282). Plaintiff's blood counts were adequate and she was still in remission without evidence of recurrent disease. Her chronic GVHD of the skin had improved and remained stable (Tr. 69).  On August 1, 2006, Plaintiff was diagnosed with post menopausal and steroid induced low bone mineral density. The prescription for treatment included calcium accompanied by vitamin D and exercise (Tr. 59-60).

Plaintiff had been diagnosed with chronic periodontal disease, dental caries (decay) and retained dental roots. In October 2006, Plaintiff underwent an extraction of 24 teeth (Tr. 83-84).

In June 2007, Plaintiff reported to Dr. Careen Y. Lowder, M. D., an ophthalmologist, that Plaintiff's dry eye disease had responded well to treatment (Tr. 290).

Diagnosed with autoimmune hemolytic anemia, Plaintiff underwent a red blood cell

7

transfusion on December 1, 2007.  Her hemoglobin levels were elevated to an appropriate level and her lactate dehydrogenase, an enzyme that facilitates the conversion of glucose to usable energy for cells, was increased to an appropriate level (Tr. 316).

On December 17, 2007, Dr. Sobecks noted that Plaintiff remained in remission without evidence of recurrent disease since March 6, 2002.  Additionally, the chronic GVHD of her skin had been well controlled with medication created specifically to prevent transplant rejection (Tr. 320).

On January 17, 2008, Dr. Sobecks treated Plaintiff for bilateral lower extremity edema.  She continued, however, to show no evidence of recurrent disease since March 6, 2002 (Tr. 198).

The chest X-ray taken on April 4, 2008 showed no evidence of active disease in the lungs or mediastinum or other significant change since the examination on February 25, 2008 (Tr. 260).

### IV. THE STANDARD FOR CONTINUING DISABILITY REVIEW.

There is a statutory requirement that, if a claimant is entitled to disability benefits, his or her continued entitlement to such benefits must be reviewed periodically.  20 C. F. R. § 404.1594(a) (Thomson Reuters 2011).  Benefits may only be terminated if substantial evidence demonstrates that there has been medical improvement in the individual's impairment and the individual cannot engage in substantial gainful activity.  42 U. S. C. § 423 (f) (Thomson Reuters 2011).  Medical improvement is any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  20 C. F. R. § 404.1594 (b) (1) (Thomson Reuters 2011).  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).  20 C. F. R. § 404.1594 (b) (1) (Thomson Reuters 2011).

In order to insure that these statutory mandates are enforced, 20 C.F.R. § 404.1594(f) prescribed eight evaluation steps to be used in termination cases. The eight steps are: (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his/her past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work. 20 C.F.R. § 404.1594(f) (Thomson Reuters 2011). A denial of benefits pursuant to this process is reviewed for substantial evidence to support the ALJ's decision.

### V. THE ALJ'S FINDINGS.

Upon consideration of the evidence, the ALJ made the following findings:

1. The most recent favorable medical decision finding that Plaintiff was disabled is the determination dated February 15, 2002. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, Plaintiff had the following medically determinable impairment: acute myelogenous leukemia. This impairment was found to meet §§ 7.11 of 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).

3. Through July 31, 2004, the date Plaintiff's disability ended, Plaintiff did not engage in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).

9

4. The medical evidence established that, as of July 31, 2004, Plaintiff had the following medically determinable impairments: leukemia in remission and bone vs. graft disease.

5. Since July 31, 2004, Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1525 and 404.1526.

6. Medical improvement occurred as of July 31, 2004. 20 C.F.R. § 404.1594(b)(1).

7. The medical improvement was related to the ability to work because, as of July 31, 2004, Plaintiff's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD. 20 C.F.R. § 404.1594(c)(3)(i).

8. As of July 31, 2004, Plaintiff continued to have a severe impairment or combination of impairments. 20 C.F.R. § 404.1594(f)(6).

9. Based on the impairments present as of July 31, 2004, Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).

10. As of July 31, 2004, Plaintiff was unable to perform past relevant work. 20 C.F.R. § 404.1565.

11. On July 31, 2004, Plaintiff was a younger individual age 18-49. 20 C.F.R. § 404.1563.

12. Plaintiff had at least a high school education and was able to communicate in English. 20 C.F.R. § 404.1564.

13. Beginning on July 31, 2004, transferability of job skills was not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not Plaintiff had transferable job skills. See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

14. As of July 31, 2004, considering Plaintiff's age, education, work experience, and residual functional capacity based on the impairments present as of July 31, 2004, Plaintiff was able to perform a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1560(c) and 404.1566.

15. Plaintiff's disability ended as of July 31, 2004. 20 C.F.R. 404.1594(f)(8).

(Tr. 18-21).

## VI.  STANDARD OF REVIEW.

Judicial review is limited in scope by 42 U.S.C. § 405(g) which authorizes the district court to conduct review of the Commissioner's final decision. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006).  The court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Under this standard, the court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)).  The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th

11

Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)).  If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION.

At step seven of the evaluation, the ALJ found that Plaintiff had the residual functional capacity for a full range of light work.  Plaintiff argues that the ALJ's finding that she is capable of performing a full range of light work is not supported by substantial evidence.  In fact, Plaintiff argues that the ALJ failed to perform any analysis of medical evidence.

The ALJ is required to make a decision based on all of the evidence, including the testimony adduced at the hearing.  20 C. F. R § 405.370(a)(Thomson Reuters 2011).  The ALJ is directed to prepare a written decision that explains in clear and understandable language the specific reasons for the decision.  20 C. F. R § 405.370(a)(Thomson Reuters 2011).

During the hearing, in certain categories of claims that will be identified in advance, the ALJ may orally explain in clear and understandable language the specific reasons for, and enter into the record, a fully favorable decision.  20 C. F. R § 405.370(b)(Thomson Reuters 2011).  The ALJ is required to include in the record a document that sets forth the **key data, findings of fact, and narrative rationale for the decision**.  20 C. F. R § 405.370(b)(Thomson Reuters 2011).

In this case, the ALJ set forth the standard for review under 20 C. F. R. § 404.1594 and made the conclusory statement that Plaintiff's condition improved.  However, the Magistrate is unable to conduct meaningful review of whether substantial evidence supports the ALJ's decision.  The ALJ failed to articulate key data, make findings of fact or conduct a narrative

12

rationale for a decision on any of the other steps that support a determination if a claimant's benefits continue. Accordingly, this case is remanded to the Commissioner, pursuant to sentence four of 42 U. S. C. § 405(g), and the ALJ is directed to prepare a written decision that explains in clear and understandable language the key facts, findings of facts, narrative rationale for the decision as well as any other specific reasons for the decision.

## VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed and the case is remanded to the Commissioner with instructions to: (1) conduct an appropriate analysis of Plaintiff's claim under the eight step procedure mandated for review of continuation of disability benefits, (2) prepare a written decision that explains in clear and understandable language the key facts, findings of facts, narrative rationale for the decision as well as any other specific reasons for the decision and (3) determine based on the analysis, whether Plaintiff is under a disability.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date:   July 29, 2011